UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GWENEVER BOYD, Mother and Next
Friend of B.B., a Minor                                                                  PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:16-CV-00023-CRS

JEFFERSON COUNTY PUBLIC SCHOOLS
a/k/a JEFFERSON COUNTY BOARD OF
EDUCATION, ET AL.                                                                       DEFENDANTS

**MEMORANDUM OPINION**

I. Introduction

This matter is before the court on motions by defendants, Jefferson County Board of Education ("JCBE") and Assistant Principal Jeff Jennings (collectively "School Defendants") and Louisville-Jefferson County Metro Government ("Louisville Metro") and Officer Sean Jones (collectively "SRO Defendants") for summary judgment. ECF No. 30, 33. For the reasons below, the court will grant both motions.

II. Case Background

This case arises from an incident at Pleasure Ridge Park High School ("PRP") involving two female students, B.B and S.R. On January 27, 2015, S.R. reported to Assistant Principal Jeff Jennings that she was being harassed and threatened by B.B. Jennings Aff., ECF No. 30-2, ¶ 2. S.R. alleged that B.B. planned to physically fight her before third period that day. *Id.* This was reportedly due to the fact that S.R. had instituted a legal action against C.O.—one of B.B.'s male friends—for unwanted sexual touching. *Id.*

Jennings subsequently investigated S.R.'s claims. *Id* at ¶ 3. He spoke with several students and collected their written statements. Ex. 1-A, ECF No. 30-3. Three statements clearly support S.R.'s allegation that B.B. wanted to physically fight her. One student, D.H., stated that when he went to the second floor of the school, there were "people standing around everywhere and B.B. was there telling them all that she was waiting for S.R. and that she was going to fight her." *Id.* at 8. A second student, B.Y., stated that "B.B. was planning to fight [S.R.] because [B.B.'s] ex that goes here named [C.O.] touched [S.R.] under her shirt." *Id.* at 5. A third student, S.J.R., stated that "there was going to be a fight" between B.B. and S.R. *Id.* at p. 6.

Two other students claimed that B.B. intended to confront S.R. One statement made by R.H. claimed that she "got a Snapchat from B.B. saying that she was going to expose S.R. . . . because S.R. was lying about B.B.'s ex touching her and she needed to learn her lesson." *Id.* at 2. She further claimed that she would confront S.R. at "either 3rd or 5th period." *Id.* Another statement made by B.D. claimed that B.B. "was going to confront S.R. about getting [C.O.] suspended and about going to Mr. [Stinson] saying B.B. was bullying her." *Id.* at 3.

After reviewing these written statements, Jennings called B.B. to the conference room to discuss the situation. Jennings Aff., ECF No. 30-2, ¶ 6. He informed B.B. of the allegations against her and the written statements he had collected. Jennings Aff., ECF No. 30-2, ¶ 6; B.B. Dep., ECF No. 35-1, p. 6. B.B. admitted that she planned to confront S.R., but denied that she intended to physically fight her. *Id.* Jennings then asked B.B. to name some students who would support her account. Jennings Aff., ECF No. 30-2, ¶ 7; B.B. Dep., ECF No. 35-1, p. 6. B.B. provided him with the names of a couple of students that might help. *Id.*

Jennings then left the conference room to speak with the students B.B. had mentioned. B.B. Dep. ECF No. 35-1, p. 6. Only one of these students, M.M., supported B.B.'s account,

stating that B.B. "just wanted to talk to [S.R.] and never bullied her . . ." Jennings Aff., ECF No. 30-2, ¶ 7; Ex. 1-A, ECF No. 30-3. The other student B.B. named gave a statement that was irrelevant to the issue. Ex. 1-A, ECF No. 30-3.

At some point, Jennings also reviewed the security footage from the cameras outside S.R.'s third period class. Jennings Aff., ECF No. 30-2, ¶ 4. This footage corroborated several of the written statements, as it showed B.B. arrive outside of S.R.'s third period classroom, throw her backpack on the floor, and take a wide-legged stance directly in the middle of the hallway. Ex. 1-B, ECF No. 30-4. A group of students then crowded around B.B. *Id.*

Having considered S.R. and B.B.'s statements, the written statements from other students, and the video footage, Jennings issued B.B. a six-day suspension for harassing another student. Jennings Aff., ECF No. 30-2, ¶ 15; Ex. 1-E, ECF No. 30-7. He also called in PRP's School Resource Officer ("SRO"), Officer Sean Jones, to assess whether B.B.'s conduct violated any laws. Jennings Aff., ECF No. 30-2, ¶ 8. Officer Jones reviewed the evidence that Jennings had collected and determined that B.B. had in fact broken several laws, including intimidating a participant in the legal process, terroristic threatening in the third degree, harassment, and menacing. Jones Dep., ECF No. 33-7, p. 2. Accordingly, Officer Jones placed B.B. under arrest. *Id.* After reading B.B. her *Miranda* rights and placing her in handcuffs, he escorted her to his squad car and transported her to Jefferson County Youth Center (JCYC). *Id.* In accordance with PRP's policy, Assistant Principal Jason Stinson accompanied B.B. in the patrol car.[1] Stinson Dep., ECF No. 35-4, p. 2.

On October 16, 2015, the juvenile court issued an order dismissing the charges against B.B. without prejudice. ECF No. 1-2, p. 17. Two months later, B.B.'s mother, Gwenever Boyd

---

[1] Although initially included as a defendant in Boyd's complaint, all claims against Assistant Principal Stinson have been dismissed.

(hereinafter "Boyd"), brought suit in Jefferson Circuit Court. Pl. Complaint, ECF No. 1-2. Boyd's complaint alleges that Jennings and Officer Jones violated B.B.'s constitutional rights to freedom from unreasonable search and seizure, due process, and equal protection, while acting under color of state law. *Id.* at ¶¶ 7-11. It further alleges that Jennings and Officer Jones assaulted, falsely imprisoned, and maliciously prosecuted B.B. *Id.* at ¶¶ 15, 20, 25. Additionally, the complaint alleges that JCBE and Louisville Metro are liable for these § 1983 and state law claims, as Jennings and Officer Jones were acting in their official capacities. *Id.* at ¶¶ 12-13, 17, 23, 29. The case was removed to this court on January 11, 2016. *Id.* at p. 1.

### III. Legal Standard

The trial court shall grant summary judgment in a case "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of "demonstrating that [there is] no genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to "point to evidence demonstrating that there *is* a genuine issue of material fact for trial." *Id.* at 323 (emphasis added).

In considering a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There must actually be "evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

IV.     Discussion

A. Section 1983 Claims

Count I of Boyd's complaint alleges that Jennings and Officer Jones, acting under color of state law, violated B.B.'s Fourth Amendment right to freedom from unreasonable search and seizure, Fourteenth Amendment right to due process, and Fourteenth Amendment right to equal protection of the law when they "unlawfully restrained, detained, arrested, and charged B.B., or caused her to be charged, with committing crimes of Intimidating a Participant in the Legal Process, Menacing, Terroristic Threatening 3rd Degree, and Harassment-No Physical Contact." Pl. Complaint, ECF No. 1-2, ¶ 7. It further alleges that JCBE and Louisville Metro are liable because Jennings and Officer Jones were "acting in their official capacities and within the scope of their employment." *Id.* at ¶¶ 12, 13.

i. Claims Against Jennings and Officer Jones in Their Individual Capacities

Government officials performing discretionary functions are generally shielded from "liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the defense of qualified immunity, a plaintiff must demonstrate that (1) a statutory or constitutional right has been violated; and (2) that the right was 'clearly established' at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

1. Illegal Search and Seizure

First, Boyd alleges that Jennings and Officer Jones violated B.B.'s Fourth Amendment right to freedom from unreasonable search and seizure.

a. <u>Jennings</u>

It is well established that the Fourth Amendment applies to searches and seizures of students by public school officials on school grounds. *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *see also Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (students do not "shed their constitutional rights . . . at the schoolhouse gate."). However, due to the "substantial need of teachers and administrators to maintain order in schools," the traditional probable cause and warrant requirement is relaxed in this context. *T.L.O.*, 469 U.S. at 340-41; *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). In order to conduct a legal search or seizure, a school official must show that "there is a reasonable basis for believing that the pupil has violated the law or school rule." *S.E. v. Grant County Bd. Of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (quoting *Wofford v. Evans*, 390 F.3d 318 (4th Cir. 2004)). What constitutes a 'reasonable basis' depends on the totality of the circumstances. *Id.* Additionally, the search or seizure must be limited "in scope to the circumstances which justified [the action] in the first place." *Id.*

The parties do not dispute that B.B. was detained during the course of Jennings' investigation. The question, therefore, is whether this detention was reasonable. Jennings received a report from S.R. that B.B. was threatening and harassing her to the point where S.R. did not attend her third period class. Jennings Aff., ECF No. 30-2, ¶ 2. The JCPS Code of Acceptable Behavior and Discipline prohibits students from engaging in harassment, which is defined as "intimidation by threats or acts of physical violence or any expression of hatred, contempt, or prejudice toward an individual for any reason . . ." Ex. 1-F, ECF No. 30-8, p. 10. Jennings proceeded to investigate this allegation by speaking to several students and obtaining

their written statements. Ex. 1-A, ECF No. 30-3. The majority of these statements corroborated S.R.'s allegation that B.B. intended to fight or confront her regarding the alleged incident with C.O. *Id.* Several statements also corroborated S.R.'s claim that B.B. intended to approach her at third period. *Id.* At that point, Jennings made the decision to call B.B. to the conference room. Jennings Aff., ECF No. 30-2, ¶ 4.

Courts have consistently held that information from informants can provide a basis for reasonable suspicion. *See Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (holding that an informant tip provided reasonable suspicion for a *Terry* stop, where the information was corroborated and "the informant had proved to be reliable in the past."); *U.S. v. Williams*, 483 Fed. Appx. 21 (6th Cir. 2012). In the context of school investigations, student often serve the role of informants. For example, in *Williams ex rel. Allen v. Cambridge Board of Education*, 370 F.3d 630 (6th Cir. 2004), three girls reported to their assistant principal that a fellow student planned to commit violence on school grounds. The Sixth Circuit found that these students' statements provided probable cause—a higher standard than reasonable suspicion—for the student's search. *Id.* The court specifically noted that the school's assistant principal was in a "superior position" to "asse[ss] . . . the three girls' credibility." *Id.*; *See also Williams by Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Similarly, in the present case Jennings assessed S.R.'s allegation and the written accounts from other students before deciding to call B.B. to the conference room. Jennings had a reasonable basis for detaining B.B.

Having concluded that Jennings had a reasonable basis for the detention, it next must be determined whether this detention was reasonable in scope. When Jennings first met with B.B. in the conference room, he explained the allegation against her and the statements he had received from other students. Jennings Aff., ECF No. 30-2. He then listened to B.B.'s account of what

occurred and gave her the opportunity to name students who would vouch for her. B.B. Dep., ECF No. 35-1, p. 6. After getting a list of names, Jennings left the room for approximately ten minutes to speak with those students. *Id.* He also watched video footage that showed B.B. standing outside S.R.'s third period classroom. Jennings Aff., ECF No. 30-2, ¶ 4. At that point, he made the decision to bring Officer Jones into the matter.

Once Jennings turned B.B. over to Officer Jones, his authority over the matter ceased. Officer Jones reviewed the evidence Jennings had collected and made an independent determination to arrest B.B. Jones Dep., ECF No. 33-6, p. 2. It need not be determined whether Jennings' investigation 'caused' B.B. to be unlawfully arrested because, as the court explains below, Officer Jones had probable cause to arrest B.B. B.B.'s detention was appropriately limited in scope.

Because Jennings had a reasonable basis for detaining B.B. and the detention was reasonable in scope, Jennings did not violate B.B.'s Fourth Amendment right to be free from unreasonable search and seizure. It is therefore unnecessary to consider whether this constitutional right was 'clearly established.' Boyd's § 1983 claim alleging Jennings violated B.B.'s Fourth Amendment rights fails as a matter of law.

    b. <u>Officer Jones</u>

The Fourth Amendment requires a law enforcement officer arresting a person without a warrant to have probable cause at the time the arrest is made. *Beck v. State of Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which [the officer has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [arrestee has] committed . . . an offense." *Id.* at 91.

8

After being informed of the situation, Officer Jones reviewed the information collected by Jennings, including S.R.'s allegation, the written statements from students corroborating the allegation, and video footage which showed B.B. standing outside S.R.'s third period class and throwing her backpack on the ground. Jones Dep., ECF No. 35-3, p. 4. These facts would warrant a prudent person in believing that B.B. had engaged in intimidation of a participant in the legal process, [2] terroristic threatening in the third degree, [3] harassment, [4] and menacing. [5] Thus, Officer Jones had probable cause to place B.B. under arrest. Boyd's § 1983 claim alleging Officer Jones violated B.B.'s Fourth Amendment rights also fails as a matter of law.

2. <u>Violation of Due Process</u>

Second, Boyd claims that Jennings and Officer Jones violated B.B.'s right to "the enjoyment of life, liberty, and property and freedom from its deprivation without due process of law." Pl. Complaint, ECF No. 1-2, ¶ 8. Due process has two components: (1) procedural due process and (2) substantive due process. Procedural due process "is a right to fair procedure or set of procedures before one can be deprived of property by the state." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). By contrast, substantive due process "provides 'heightened protection against government interference with certain fundamental rights and liberty interests.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). Although School Defendants discuss the process afforded to B.B. before she was

---

[2] "A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he: (a) influences, or attempts to influence, the testimony, vote, decision, or opinion of that person; (b) induces, or attempts to induce, that person to avoid legal process summoning him or her to testify . . ." KRS 524.040.
[3] "A person is guilty of terroristic threatening in the third degree when: (a) he threatens to commit any crime likely to result in death or serious physical injury to another person . . ." KRS 508.080.
[4] "(1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she . . . (2) substantially disrupts the operation of the school; or creates a hostile environment by means of any gestures, written communications, oral statements, or physical acts that a reasonable person under the circumstances should know would cause another student to suffer fear of physical harm, intimidation, humiliation, or embarrassment." KRS 525.070.
[5] (1) A person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." KRS 508.050.

suspended, Boyd clearly states in her response motion that "she does not bring a claim" based on B.B.'s "suspen[sion] from school." Pl. Response, ECF No. 35, p. 14. Rather, her claims rest on B.B.'s unlawful seizure, detention, arrest, and criminal charges. *Id.*

    a. <u>Procedural Due Process</u>

With regard to procedural due process, the Sixth Circuit has held that "the Due Process Clause of the Fourteenth Amendment does not require any additional procedures" for conducting a search or seizure "beyond those mandated by the Fourth Amendment." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 313 (6th Cir. 2005). As stated above, Jennings did not violate B.B.'s Fourth Amendment rights, as he had a reasonable basis for detaining B.B. and the detention was limited in scope to investigating a violation of school rules. Likewise, Officer Jones comported with procedural due process, as he had probable cause to place B.B. under arrest.

    b. <u>Substantive Due Process</u>

With regard to substantive due process, the Supreme Court has held that "[w]here a particular [Constitutional] Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Fourth Amendment explicitly protects individuals' rights "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const., IV Amend. Thus, it is improper to analyze the claims against Jennings and Officer Jones for unlawful detention and arrest under substantive due process. Boyd's § 1983 claims alleging Jennings and Officer Jones violated B.B.'s right to due process fail as a matter of law.

### 3. Violation of Equal Protection

Third, Boyd claims that Jennings and Officer Jones violated B.B.'s right to equal protection of the law. The Equal Protection Clause requires "public institutions to 'treat similarly situated individuals in a similar manner.'" *Buchanon v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988)). To bring a claim under the Equal Protection Clause for racial discrimination, a plaintiff must put forth "requisite direct, circumstantial, or statistical evidence that [she] was the target of racial profiling." *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000). Boyd has not alleged any facts in the complaint or developed any evidence in the record to suggest that either Jennings or Officer Jones treated B.B. differently than other, similarly situated students of a different race. Therefore, Boyd's § 1983 claims alleging Jennings and Officer Jones violated B.B.'s equal protection rights fail as a matter of law.

### ii. Claims Against JCBE and Louisville Metro

Boyd also brings claims against JCBE and Louisville Metro for violating B.B.'s constitutional rights. In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality can be sued under § 1983 based on an unconstitutional policy or custom, but not based on "a *respondeat superior* theory" alone. Boyd fails to allege that JCBE or Louisville Metro employed unconstitutional policies or customs, instead claiming that they are liable under § 1983 solely because Jennings and Officer Jones were "acting in their official capacities and within the scope of their employment." Pl. Complaint, ECF No. 1-2, ¶ 13. These are precisely the types of claims that *Monell* excludes. Therefore, Boyd's § 1983 claims against JCBE and Louisville Metro fail as a matter of law.

B. State Law Claims

Counts II-IV of Boyd's complaint allege that Jennings and Officer Jones are liable for assault, false imprisonment, and malicious prosecution. Pl. Complaint, ECF No. 1-2, ¶¶ 15, 20, 25. It further alleges that JCBE and Louisville Metro are liable for these state law claims because Jennings and Officer Jones were acting in their official capacities.

    i. Claims Against Jennings and Officer Jones in Their Individual Capacities

        1. Assault

Count II of Boyd's complaint alleges that Jennings and Officer Jones "intentionally assaulted [B.B.] by unnecessarily and unlawfully, physically restraining and handcuffing her." Pl. Complaint, ECF No. 1-2, ¶ 15. Assault is defined as "the threat of unwanted touching of the victim," whereas battery is defined as "actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001).

        a. Jennings

Jennings called B.B. to the conference room to discuss S.R.'s allegation. Jennings Aff., ECF No. 30-2, ¶ 4. Boyd does not allege that Jennings touched or threatened to touch B.B. during this time. Pl. Complaint, ECF No. 1-2. When Jennings turned B.B. over to Officer Jones, his authority over the matter ceased. Jennings Aff., ECF No. 30-2, ¶¶ 9-10. Officer Jones made an independent determination that B.B. had broken the law and subsequently placed her in handcuffs. Jones Dep., ECF No. 35-3, p. 4. These actions cannot be attributed to Jennings. Therefore, Boyd's assault claim against Jennings fails as a matter of law.

        b. Officer Jones

Under Kentucky law, "an officer is not liable for assault or battery if, in the course of making a lawful arrest, the officer used such physical force as was necessary . . . to effect the

12

arrest but no more." *Mulcahy v. Tennessee Valley Authority*, 2010 WL 1417794, 6 (W.D. Ky. 2010) (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)). Officer Jones lawfully arrested B.B. based on probable cause that she had broken several laws. Boyd does not allege that Officer Jones used excessive force against B.B. in carrying out the arrest. Pl. Complaint, ECF No. 1-2. Therefore, Boyd's claim against Officer Jones for assault fails as a matter of law.

2. False Imprisonment

Count III of Boyd's complaint alleges that Jennings and Officer Jones "falsely arrested and unlawfully imprisoned [B.B.]." Pl. Complaint, ECF No. 1-2, ¶ 20. False imprisonment is defined as "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against [her] will, whether done by actual violence, threats or otherwise." *Banks*, 39 S.W.3d at 479. To qualify as false imprisonment, the restraint must be "wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Id.*

a. Jennings

Although Jennings did detain B.B. without her consent when he questioned her in the conference room, he had a reasonable justification for doing so. As stated above, Jennings acted under reasonable suspicion that B.B. had violated school rules. Moreover, Jennings was not involved with B.B.'s charging and arrest. Thus, B.B.'s claim against Jennings for false imprisonment fails as a matter of law.

b. Officer Jones

Officer Jones likewise was justified in detaining B.B. As discussed above, Officer Jones had probable cause to place B.B. under arrest. Therefore, Boyd's claim against Officer Jones for false imprisonment fails as a matter of law.

3. <u>Malicious Prosecution</u>

Count IV of Boyd's complaint alleges that Jennings and Officer Jones "subjected [B.B.] to malicious prosecution." Pl. Complaint, ECF No. 1-2, ¶ 25. A malicious prosecution claim exists where a defendant initiates a criminal proceeding against a plaintiff without probable cause and acting with malice, the proceeding is terminated in favor of the plaintiff, and the plaintiff suffers damages as a result. *Martin v. O'Daniel*, 507 S.W.3d 1, *11 (Ky. 2016).

    a. <u>Jennings</u>

After Jennings concluded his investigation, he brought in Officer Jones to determine whether B.B.'s conduct violated any laws. There is no evidence that Jennings acted with malice when he did this. Further, Officer Jones acted with probable cause when he ultimately arrested B.B. Thus, the malicious prosecution claim against Jennings fails as a matter of law.

    b. <u>Officer Jones</u>

Officer Jones acted with probable cause when he placed B.B. under arrest. "[W]ant of probable cause [is an] essential [element] in an action for malicious prosecution." *Stearns Coal Co. v. Johnson*, 27 S.W.2d 38, 40 (Ky. App. 1931). Therefore, Boyd's claim against Officer Jones for engaging in malicious prosecution of B.B. fails as a matter of law.

  ii.    <u>State Law Claims Against JCBE and Louisville Metro</u>

Boyd's complaint also alleges that JCBE and Louisville Metro are liable for these state law claims. In *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001), the Kentucky Supreme Court held that a county school board is entitled to governmental immunity, shielding it from tort liability, in its performance of governmental functions. This court has previously held that a school board, "conducting an investigation into an incident occurring within the school, which impacts the safety of students in the care of the school during the school day is a governmental

function." *Richardson v. Board of Education of Jefferson County Kentucky*, 2006 WL 2726777, 9 (W.D. Ky. Sept. 22, 2006). An investigation into an allegation that a student was threatening and harassing another student falls in this category. Thus, JCBE is immune from liability for Boyd's state law claims.

The Kentucky Supreme Court has also held that "Kentucky counties are cloaked with sovereign immunity . . . [that] flows from the Commonwealth's inherent immunity by virtue of a Kentucky county's status as an arm or political subdivision of the Commonwealth." *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 132 (2004). Because Louisville Metro is a Kentucky county, it is entitled to sovereign immunity against Boyd's state law claims. Therefore, Boyd's state law claims against JCBE and Louisville Metro fail as a matter of law.

V. Conclusion

For these reasons, the court will grant the motions of School Defendants and SRO Defendants for summary judgment. An order will be entered in accordance with this opinion.

October 17, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

15